35 So.2d 732

**JEANERETTE LUMBER & SHINGLE CO., LTD. v. KEMPER.**

No. 38521.

April 26, 1948.

Rehearing Denied June 1, 1948.

Chas. F. Bailey, of Lafayette, and J. Blanc Monroe, Malcolm L. Monroe and Jack A. Bornemann, of New Orleans (Debaillon, Bailey & Mouton, of Lafayette, and Monroe & Lemann, of New Orleans, of counsel), for plaintiff-appellant.

Rene H. Himel, of Franklin, for defendant-appellee.

PONDER, Justice.

This is an action in jactitation wherein the plaintiff claims the defendant has slan-

---

[2] He was ordered by the judge to deliver the children to his wife.

dered its title to the N½ of the NW¼ of Section 6, T. 15 S., R. 12 E., in the Parish of St. Martin. After the trial court had disposed of the preliminary pleadings, the case was tried on its merits. The lower court dismissed the plaintiff's suit on the ground that the plaintiff did not have possession of the property. The plaintiff has appealed.

In order for the plaintiff to maintain an action in jactitation it must have actual possession of the property. Allison v. Maroun, 193 La. 286, 190 So. 408. The lower court stated in its reasons for judgment that the proof of possession showed that the plaintiff and the defendant had conducted almost the same activities on the property. The plaintiff and the defendant could not both have actual possession of the property. It is true that the character of the land must be considered in order to determine what acts of dominion amount to possession, but, where the opposing parties rely on practically the same acts of dominion to establish possession, neither could be considered as having possession of the property to the exclusion of the other.

The land involved in this suit is located in the Atchafalaya Basin and subject to periodic overflow. It is accessible only by boat. There has never been much timber on the land and it has no value for trapping.

The plaintiff has been engaged for a number of years in the production of lumber and has acquired some 50,000 acres of land in this basin in connection with its operations, from which it has taken timber for its sawmills. No timber has ever been cut from the land involved in this suit by the plaintiff. The evidence indicates that the plaintiff did not consider that it owned this land until sometime in 1940. When it executed a lease on October 12, 1934, to the Shell Oil Company covering all its lands, the land involved in this suit was not included.

The plaintiff employed the defendant, a civil engineer, to check on the titles of its lands during 1921 and 1922. The defendant testified that he informed the plaintiff shortly thereafter that Section 6, a portion of which is involved in this suit, was not assessed to it and the plaintiff could take possession of this section and perfect its title. The record discloses that the plaintiff did not claim title to this property until 1940. Prior to that time, the land involved in this suit had practically no commercial value, but during 1940 a sudden interest was taken in the mineral development of the lands lying in the basin. The plaintiff did not have the land assessed to it until 1940 or pay any taxes on it prior to that time. Since that date, the plaintiff has been paying taxes on this property.

The defendant began acquiring an interest in the lands in controversy sometime in the year, 1936. In 1939 the defendant and his co-owners granted a mineral lease on this property. One of the parties from

whom he acquired an interest in a portion of this property had once actually lived on the property and exercised dominion over that portion of it. The defendant, during the year, 1936, executed a timber contract and timber was taken from some portions of this land. The defendant and his co-owners have been paying taxes on the property for approximately the same period of time that the taxes were paid by the plaintiff.

The plaintiff relies on the activities of its agents to establish its possession. The activities of the agents consisted of running and blazing lines around the property in the year, 1941. They painted the trees along the line with yellow paint and placed signs, measuring about ten inches by fourteen inches, upon which was written the name of the plaintiff and a warning to trespassers, about every 300 feet along the lines. These employees did not return to the property until 1943 to look after the signs. They returned again in 1944 and in in 1945. These activities, plus the payment of taxes for the year, 1940 and subsequent years, constitute the proof relied on by the plaintiff to establish its possession.

The defendant testified that he had run lines on two sides of the property prior to 1940 and had instructed persons who were living in a camp on the property to look after the land and prevent trespassing thereon. The record shows that prior to 1940 the defendant and his co-owners had granted a mineral lease on this property and that the defendant sold timber from the lands. The defendant and his co-owners have paid taxes on the property since 1940.

The proof of the acts of dominion on behalf of the plaintiff and the defendant to establish possession are of a similar nature and character, and this Court would not be warranted in disturbing the judgment of the lower court on a question of fact where the evidence does not show any manifest error in its findings. The plaintiff is not without a remedy for the reason it can institute suit to establish its title, where niether of the parties is in the actual possession of the property, under the provisions of Act No. 38 of 1908.

For the reasons assigned, the judgment is affirmed at appellant's cost.

O'NIELL, C. J., and FOURNET, J., absent.